## WILSON *v.* LANE.

An officer may attach the goods of a debtor, notwithstanding they are so mixed with the goods of another as to be undistinguishable.

It is his duty to make reasonable inquiry, to ascertain the goods of the debtor. If he is still unable to distinguish them, he may retain the whole, until the owner identifies the articles belonging to him, and points them out to the officer, and requests him to return them; and he is not liable to any action until these things are done.

It might be otherwise if he refused to deliver them without inquiry, or if he refused to deliver them at any rate.

TROVER. The action was referred to a commissioner, who reported that the goods mentioned in the plaintiff's declaration were mortgaged by Isaac Currier to the plaintiff, Feb. 9, 1853, to secure a note of $200. The mortgage was duly executed and recorded, and the debt due. The property was described as " all the stock in trade now in store No. 18, Stark Buildings, Manchester, now occupied by me as a shoe store, consisting of boots, shoes, leather, rubbers and fixtures in said store."

The defendant, as deputy-sheriff, on the 15th of October,

1853, attached all the goods in that store on a writ in favor of French *v.* Isaac Currier and E. S. Tasker, enumerated in a schedule annexed to his return. Part of the goods attached were subject to the said mortgage.

On the 18th of October the defendant, as deputy-sheriff, made a demand of the plaintiff to state under oath the amount due on the mortgage, and it was done. On the 19th the defendant requested Wilson to select and take away whatever he was entitled to under the mortgage, but he neglected and declined to do it. And on or about the 15th of October, Wilson, at the said store, said to the defendant that they had better not move the stock, as he had a mortgage upon it. The defendant told him he had attached the stock, and if he had a mortgage on it, or part of it, to take the articles away. Wilson said he did not exactly know what his mortgage consisted of, and could not tell till he saw Currier.

On or about the date of the writ in this suit, and before its commencement, the plaintiff, by direction of counsel, in view of bringing the suit, made a demand of the defendant. No demand was made in writing, or of specific articles. The demand was general. Wilson demanded the property which Lane had in his hands of Currier's, the whole he had of Currier's. Lane replied he had a bond to indemnify, or good backers. Though general, as stated, the commissioner finds that it was intended as a demand of the goods mortgaged, and was so understood by the defendant. Currier, the mortgagor, was sick at the time of the attachment, and was confined to his house for six weeks or more after.

A schedule of the goods which were mortgaged and attached, and their value, as found, and other similar goods, besides those included in the mortgage, were attached by Lane in the store. The articles included in this schedule are the same as those specified in the plaintiff's writ.

Both parties move for judgment on the report, and each claims that the judgment should be in his favor.

*Morrison, Fitch,* and *Stanley,* for the plaintiff.

The description in the mortgage was sufficient.  No particular enumeration of specific articles is necessary in a mortgage of chattels.  A general description is good as to all the articles that were there at the time of the execution of the mortgage. *Brinley* v. *Spring*, 7 Greenl. 241; *Rolfe* v. *Dorr*, 11 Shep. 104 ; *Winslow* v. *Merchants' Ins. Co.*, 4 Met. 306 ; *Harding* v. *Coburn*, 12 Met. 333 ; *Pettes* v. *Kellog*, 7 Cush. 457 ; *Belknap* v. *Wendell*, 1 Foster 175 ; 2 Hilliard Mortgages 194, *et seq.*, and cases there cited.

There was no waiver of any rights by the mortgagee.  The description in the mortgage was general.  Currier, the mortgagor, was sick at the time of the attachment, and so continued for more than six weeks after.  Under this state of facts it is not to be presumed that the plaintiff could select the goods belonging to him.  Besides, before this he had notified the defendant not to move them, and he had also stated the amount due on his mortgage.  If, then, the defendant elected to move them, he must take the consequences of such a removal.  The goods, at the time the offer was made, were in the store, where they were at the time of the mortgage, and were properly there, and the plaintiff was not bound to move them.  Besides, the offer was conditional.  It is, If you have a mortgage on them or any of them, take them away ; and Wilson's reply was that he did not know exactly what his mortgage consisted of, and he could not tell till he had seen Currier.

In order to constitute a waiver there should have been a tender and refusal of specific articles.  *Haynes* v. *Thom*, 8 Foster 356.  In order to constitute a good tender, the offer should be unconditional.  *Brown* v. *Gilmore*, 8 Greenl. 107.

But even if there was a tender and refusal, the subsequent demand by the plaintiff, and refusal by the defendant, does away with any waiver before made.  The benefit of a tender is lost by a subsequent demand and refusal.  *Rose* v. *Brown*, Kirby 293.

The demand was sufficient.  No particular words are necessary in order to constitute a demand in trover.  All that is necessary is to give the party notice of what is desired, and any

Wilson *v.* Lane.

words which do that are sufficient. 1 Chitt. Pl. 159. The case shows that when the plaintiff made the demand, the defendant replied that he had a bond to indemnify, or good backers. There was no offer, then, to give up to the plaintiff specific articles, and no demand of specific articles was necessary. 3 Steph. N. P. 2687 ; *Harding* v. *Coburn*, 12 Met. 333.

When personal property under a mortgage is attached as the property of the mortgagor, if the mortgagee demand the same of the officer, without identifying and designating specific articles only, describing them by the schedule, and as the whole or part of the goods attached by the officer in a particular house, this designation will be sufficient, provided the officer does not call upon the mortgagee to select and identify the articles more particularly, but persists in holding them as the property of the mortgagor. *Codman* v. *Freeman*, 3 Cush. 307 ; *Averill* v. *Irish*, 1 Gray 254.

It is no bar to the plaintiff's right to recover, that the goods were intermixed with other goods of the mortgagor. It has been held that if a mortgagor of goods, who is intrusted with the possession, intermix them purposely, or through want of proper care, with his own goods, so that they cannot be distinguished, and consign them for sale to a third person, who sells them, the mortgagee is entitled to recover of the consignee the value of the whole. *Willard* v. *Rich*, 11 Met. 493 ; *Averill* v. *Irish*, 1 Gray 254 ; and we can see no distinction between the mortgagee and the officer attaching the goods on a valid claim against the mortgagor.

Was there a conversion ? It is not, we apprehend, necessary there should be an absolute refusal. Any act done by the defendant, showing that he intends to retain the goods, is sufficient to constitute a conversion. If a party claims the property in the chattels as his own, or even asserts the right of another over them, it will be evidence of a conversion. 2 Saund. Pl. & Ev. 1157, 8 and 9. A wrongful refusal to deliver the property on a reasonable demand, will support trover. 2 Mass. 398. And this we think the doctrine of all the books. One need not exhibit

his title to the property, when he makes a demand of property, for which he brings his action. 2 Wheat. Selw. N. P. 544; *Ratcliffe* v. *Vance*, 2 Rep. Con. Ct.; 3 Steph. N. P. 2688. Ld. *Holt*, C. J., said that the denial of goods to him who has a right to demand them, is an actual conversion, and not evidence of it only. 2 Saund. Pl. & Ev. 1158.

*Clarke* and *Bell*, for the defendant.

The defendant contends that the mortgage to Wilson conveyed only such articles as were in the store of Currier at the date of the execution of the mortgage. *Jones* v. *Richardson*, 10 Met. 481; *Rhines* v. *Phelps*, 3 Gil. 455; *Winslow* v. *Merchants' Ins. Co.*, 4 Met. 306; *Barnard* v. *Eaton*, 2 Cush. 294; *Codman* v. *Freeman*, 3 Cush. 306.

There was no sufficient description of the property to enable the mortgagee, who was not in possession, to maintain an action against an officer attaching them, at the suit of the creditors of the mortgagor, without a designation by the mortgagee of the articles conveyed to him. *Robbins* v. *Parker*, 3 Met. 117; *Abington* v. *Lipscomb*, 1 Ad. and E. N. S. 776; *Edgerly* v. *Emerson*, 3 Foster 555; *Sawyer* v. *Merrill*, 6 Pick. 478. Where the goods of two persons are so intermixed that they cannot be distinguished, an attachment of the whole on a writ against one is legal, and will not be defeated as to the goods of the other, until they are identified. *Lewis* v. *Whittemore*, 5 N. H. 364; *Shumway* v. *Rutter*, 8 Pick. 443. Where the goods of a third person are so intermixed with the goods of a debtor that the officer on due inquiry cannot ascertain them, the owner cannot maintain an action against the officer, until a demand and refusal by him. In this case the court say, " where the articles can be designated, the rules of fair dealing may well require that under such circumstances the particular articles claimed by him be pointed out and demanded, before the officer is sued for taking and detaining them." *Harding* v. *Coburn*, 12 Met. 333. The same rule is sustained in *Willard* v. *Rice*, 11 Met. 493; *Denny* v. *Lincoln*, 13 Met. 200; *Brinley* v. *Spring*, 7 Greenl. 241.

The demand in trover is for the purpose of giving the defendant an opportunity to restore the property. 1 Ch. Pl. 159. It would therefore seem to be no more than reasonable that the demand should in some way indicate the articles claimed, so that the officer might comply with the demand. The mortgage does not furnish the requisite information, and therefore the plaintiff ought to have identified the goods he claimed, or given the defendant such information as would have enabled him to identify them, before commencing this action.

The refusal by the plaintiff to take the mortgaged property, when tendered to him, is a waiver of his lien as against the creditors of the mortgagor. This point does not seem to have been expressly decided, but the reasoning in analogous cases would indicate it to be a just and equitable rule ; as, where a surveyor of highways lawfully removed wood, which had been placed in the highway, and gave notice to the owner, and told him he might have it on paying for its removal. Held, in an action of trover for the wood, that there was no conversion. *Plumer* v. *Brown*, 8 Met. 578. A ratification of a tortious taking will defeat an action of trover. *Hewes* v. *Parkman*, 20 Pick. 96. A person having ratified the acts of another, who wrongfully sold his property, cannot afterwards treat him as a wrong-doer, and maintain trover. *Brewer* v. *Sparrow*, 7 B. and C. 310. A refusal to receive a tender will excuse an offer of specific articles. *Barker* v. *Pakenhorn*, 2 Wash. C. C. 142 ; *Brown* v. *Gilmore*, 8 Greenl. 197. A tender and refusal of the property puts an end to the right to sue on the contract. *Mitchell* v. *Merrill*, 2 Black. 87. A tender of specific articles is a satisfaction of the contract, and if the tender is not accepted the right of action is not revived by a subsequent demand and refusal. *Lamb* v. *Lathrop*, 13 Wend. 95. Upon an obligation for the delivery of specific articles, a tender and refusal of the articles is a perpetual discharge. *Haynes* v. *Thom*, 8 Foster 386 ; *Chase* v. *Flanders*, 2 N. H. 418 ; *Coit* v. *Houston*, 3 Johns. Ca. 243 ; *Slingerland* v. *Morse*, 8 Johns. 474 ; *Robbins* v. *Luce*, 4 Mass. 474. A refusal to accept a tender of specific

articles discharges the contract, and the debt, and vests no property in the articles tendered. *Wild* v. *Hadley*, 1 N. H. 295. If a sheriff, to whom a receipt for property is given, assent to the conversion of the same by the receiptor, he thereby waives his claim on the receipt. *Stevens* v. *Eames*, 2 Foster 568.

The demand was insufficient, because it did not demand the property mortgaged. The demand should have been of the property mortgaged to the plaintiff, and he should have designated it, and without annexing conditions he had no right to impose. The demand, if any was made, was a demand of the whole property attached, including the property mortgaged and other articles, to which the plaintiff had no claim, and such demand is insufficient. A demand of fixtures is not a sufficient demand of articles not fixtures. *Colgrave* v. *Dias Santos*, 2 B. and C. 76 ; 3 Saund. Pl. and Ev. 1159. In this case, where the fixtures and other articles were in possession of the defendant, the court say that " the plaintiff should have made a specific demand of those articles, if he intended to rely on them. A demand to deliver in the same plight, and a refusal, will not prove a conversion. *Rushworth* v. *Taylor*, 3 Q. B. 699; 3 Saunders' Pl. and Ev. 1161. Where the plaintiff, being entitled to the five best beasts as heriots, marked seven, claiming all as heriots, and left them in the possession of the defendant, who was the original owner, the plaintiff applied to the defendant for the beasts generally. The defendant refused to give them up without qualifying his refusal. *Held*, no conversion of any of the beasts. *Abington* v. *Lipscomb*, 1 Ad. and El. N. S. 776. The demand must show distinctly who is the claimant, and what goods are demanded. 1 Ch. Pl. 159 ; 3 Steph. N. P. 2686.

Because there being an intermingling of goods, the plaintiff was bound to designate his goods, or offer to do so. In cases of intermingling of goods a demand is necessary, whether there has been a conversion or not. *Bond* v. *Ward*, 7 Mass. 123. A sheriff may attach the goods of a debtor, although they be intermixed with those of another, and may hold them until such other person identify his property, and demand a re-delivery. *Lewis*

v. *Whittemore*, 5 N. H. 364; *Hesseltine* v. *Stockwell*, 30 Maine 237; *Bryant* v. *Ware*, ibid, 295; *Pettingill* v. *Bartlett*, 1 N. H. 87; *Barron* v. *Cobleigh*, 11 N. H. 557. Where one confounds another's property with his own, so that it cannot be distinguished, he must bear all the loss caused by the confusion. *Breckenridge* v. *Holland*, 2 Black. 377; *Shumway* v. *Rutter*, 8 Pick. 448; *Chesterfield Man. Co.* v. *Dehon*, 5 Pick. 7; *Denston* v. *Perkins*, 2 Pick. 286; *Thompson* v. *Perkins*, 3 Mason 232.

Because, without such designation in this case, delivery was impossible. A demand and refusal are only evidence of conversion, and may be repelled by proof that a compliance was impossible. *Hill* v. *Covell*, 1 Comst. 522; 6 Barb. 436. So a demand and refusal do not constitute a conversion, where the party on whom the demand is made is without fault, and has not the power to comply. *Carr* v. *Clough*, 6 Foster 280. So if, for a sufficient reason, the party could not comply with the demand, his refusal would not constitute a conversion. *Smith* v. *Young*, 1 Camp. 441; *Knapp* v. *Winchester*, 11 Vt. 351; *White* v. *Phelps*, 12 N. H. 383; 1 Ch. Pl. 160; 3 Phil. Ev. 226; 2 Greenl. Ev. 624, *et seq.*

Because, there having been an express tender to him of the property which he claimed, he was bound to give such reasonable description as would enable the officer to distinguish the property, and deliver it to him. Under the circumstances of this case, the officer might well be in doubt, as to what property was intended to be claimed by the plaintiff, as included in his mortgage; and until that doubt was reasonably removed there was no conversion. Where refusal to deliver may be considered only as the result of a reasonable hesitation in a doubtful matter, it is not sufficient evidence to prove a conversion. *Robinson* v. *Burleigh*, 5 N. H. 225; *Fletcher* v. *Robinson*, 7 N. H. 452; *Zachary* v. *Pierce*, 4 Eng. 212; *Alexander* v. *Southey*, 5 B. and Ald. 247; *Wellington* v. *Wentworth*, 8 Met. 548; *Thompson* v. *Rowe*, 16 Conn. 71. The circumstances of this case do not show a conversion. It is no conversion, where the possessor

of goods refuses to deliver them until some condition lawfully imposed is complied with, or until some ownership is shown in the claimant, or where the claimant has coupled his demand with a condition he has no right to impose. 2 Greenl. Ev., sec. 645, and cases cited.

In this case the defendant had a right, there being no such description in the mortgage as would enable him to identify the property mortgaged, to retain it until the plaintiff showed some ownership to something. It was a condition reasonable in itself, and one which he had a right to impose. And the demand by Wilson of all the property he had of Currier's, was a demand he had no right or authority to make, and the retention of the property by the officer, or even a direct refusal by the officer to comply with the demand, as it was made, would be no evidence of a conversion.

BELL, J. The case shows a mortgage of all the stock in trade now in store No. 18, &c., consisting of boots, shoes, leather, rubbers and fixtures ; and an attachment, made three quarters of a year afterwards, of all the stock then in the store. The stock reported in the schedule of the commissioner, as included in the mortgage, and subsequently taken by the officer, was, with some trivial exceptions, goods such as are commonly kept for sale in a shoe store. Other similar goods then in the store were attached. It is evident it was not in the power of the officer, from the description in the mortgage, to select the goods included in it. It was quite too general. It afforded no means by which a safe discrimination could be made.

It would seem that in England it was formerly considered that the sheriff might empannel a jury, to decide, in case of dispute, whether goods seized were the property of the debtor ; but it is now held that he must take the goods of the debtor only at his peril, though the courts will afford him protection upon a proper and seasonable application, by not requiring him to return his writ till he is fully indemnified. Watson, Sheriff, 195, &c. No case has been found by us in the English Reports presenting the

substantial features of this case, though they doubtless must exist.

The question arose in this country as early as 1810, in the case of *Bond* v. *Ward*, 7 Mass. 127, and it was held by *Parsons* and the court, that if the goods of a stranger are in the possession of a debtor, and so mixed with the debtor's goods that the officer, on due inquiry, cannot distinguish them, the owner can maintain no action against the officer until notice and demand of his goods, and a refusal or delay of the officer to re-deliver them. In *Shumway* v. *Rutter*, 8 Pick. 443, it was again held that when the owner of chattels suffers them to be mixed with those of another person, so that they cannot be distinguished, an officer will not be liable to an action of trespass for attaching them as the property of such other person. But if after the attachment such owner *points out his goods* to the officer, and demands a re-delivery of them, and the officer, notwithstanding, sells them, the sale will be a conversion. If such owner exhibits to the officer a bill of sale of articles of the same kind with others attached by him, with which they are intermixed, so as to·be undistinguishable, the officer will be justified if he selects and gives up the least valuable articles corresponding with the bill of sale.

The doctrines of these cases were fully recognized here in the case of *Lewis* v. *Whittemore*, 5 N. H. 366, where it was held that it was the duty of the officer to attach the goods of the debtor, notwithstanding they were intermixed with the goods of the plaintiff; and he had a right to take and hold the whole, until the plaintiff identified his goods and demanded a re-delivery. The sheriff cannot be treated as a trespasser for doing what he has a right to do. If the plaintiff gave the officer notice of what interest he had in the corn, (there in question,) " and demanded a return, trover may be maintained. If the officer has sold the whole after notice of the plaintiff's claim, that may be a conversion, but trespass does not lie for the original taking."

To make the officer liable in this last case, it seems the stranger must identify his property, and give notice thereof to the officer. 8 Pick. 448.

In order to justify the attachment of the goods of a stranger with those of the debtor, it is incumbent on the debtor to show that the goods were of such a character, or at least that there was such an intermixture, that they could not upon due enquiry have been distinguished by the officer who made the attachment, or that the aid of the plaintiff was required for that purpose. *Walcutt* v. *Keith*, 2 Foster 210 ; *Holbrook* v. *Hyde*, 1 Vt. 331 ; *Bryant* v. *Ware*, 17 Shep. 295.

From the principles established by these decisions it follows that the sheriff in this case, being unable to distinguish, from the description given in the mortgage, the goods which the plaintiff was entitled to claim, had the duty imposed upon him of making reasonable inquiry to ascertain what were the goods liable to be attached, and what belonged to others. No general rule can be laid down as to what should be deemed reasonable inquiry in the various cases that may be supposed. The officer here applied to the plaintiff himself, told him he had attached the stock, and if he had a mortgage on any of the goods, to take them away, and the plaintiff said he did not know exactly what his mortgage consisted of, and could not tell till he saw Currier, the mortgagor. This must be deemed sufficient notice to the plaintiff of the attachment, as well as sufficient inquiry as to the property of the articles. The defendant had, then, a right to attach and to retain the articles until the plaintiff should select those belonging to him, and point them out to the officer, and request the return, or delivery to himself, of the articles thus pointed out; and he was not liable to any action until these things had been done, and he had then either refused to give up the property, or had unreasonably delayed to do it. There is no pretence that any of these things were done before the institution of this suit. The goods were not identified, nor pointed out to the officer by any description which would enable him to separate them from the goods not claimed by the plaintiff. Though he had been requested to take away his goods, his demand was accompanied by no offer to aid in their separation. The demand was general of the goods in the officer's hands included in the mortgage. The

plaintiff seems to have mistaken the law as to the party on whom rested the burden of discriminating the goods belonging to the plaintiff, and to have supposed that the officer was bound at his peril to make the selection. The action was consequently prematurely brought before any right of action had accrued. There was no conversion until the officer had done something with the property which he had not by law the right to do.

It is said, in *Shumway* v. *Rutter*, that if a bill of sale of articles of the same kind as those attached, is exhibited, a sheriff may give up the least valuable articles, answering that description, but he was not bound to do that under the circumstances of this case. The mortgage had been made three fourths of a year, during which the trade of buying and selling had been going on, and it could not be assumed, without proof, that all or any given portion of a particular kind of goods remained at the time of the attachment, as they were at the time of the mortgage, from the mere fact that goods of the same kind were then found. The burden was on the plaintiff to show, not only that the goods answered to the general description of those in the mortgage, but that they were a portion of those then on hand in the store. Nothing like this was done, or attempted, so far as appears, till the hearing before the commissioner; and none of the goods were ever pointed out as those included in the mortgage before suit.

It is suggested, in argument, that upon the demand for the property, the defendant did not call upon the plaintiff to select and identify the goods he claimed, but persisted in holding them at any rate—declaring he had a bond of indemnity, or good backers ; and that in such a case the demand is sufficient, without any designation of the particular goods claimed, and two decisions in Massachusetts are cited in support of the position.

We cannot doubt that if a sheriff, in a case where he had attached mortgaged goods, intermixed with those liable to attachment, should refuse, when requested to deliver them, at any rate and without any enquiry or request to have those claimed pointed out, such refusal might dispense with any identification ;

State *v.* Johnson.

just as upon a tender a party who declares he will not take the money if offered, cannot object that the money was not produced, because by his own conduct he dispenses with its production. But here we regard the case as standing on a different ground. The officer had made endeavors to ascertain the goods mortgaged. He had called on the plaintiff to point out his goods and take them away. The plaintiff was then the party in default, and it had become his duty to point out his goods, when be made his demand of them, and the sheriff had done all that was necessary to entitle him to hold the goods until the plaintiff has designated distinctly those he claimed. And there seems to us no reasonable ground to understand the sheriff as peremptorily refusing to give up the goods; at any rate, after he had thus applied to the plaintiff to take his goods, and he had not done it. The only reasonable understanding of what passed would be, " If you do not choose to point out your goods, as I have requested, I shall not give them up."

Upon the facts reported there must be

*Judgment for the defendant.*