ORANGE COUNTY, FEBRUARY TERM, 1828.

### The State vs. Seaver Little.

That in declaring upon a statute-offence, in an indictment, it is not necessary
to declare in the words of the statute, but only to show the offence substan-
tially within the statute.

That it is not necessary to aver that *Benjamin P. Calfe*, who was disinterred,
was a person: that shall be intended as the indictment is worded.

THIS was an indictment against the respondent, upon which he
was tried and convicted in the County Court.    After which a
*motion in arrest* was filed, and overruled in that court.    And that
decision was brought up for a revision in this Court.

The substance of the indictment was, " That one *Seaver Lit-
" tle*, of *Chelsea*, in the said County of *Orange*, on the night of
" the 25th day of October, in the year of our Lord, one thousand
" eight hundred and twenty-six, with force and arms, at *Washing-
" ton*, in the said County of *Orange*, the public burying-ground,
" near the west meeting-house, in said *Washington*, unlawfully
" did enter, and the dead body of one *Benjamin P. Calfe*, then
" lately before laid in a coffin, & interred in the same burying ground,
" did then and there unlawfully dig up, disinter, remove from the said

Orange, Feb. 1828. } "coffin, disturb and carry away, to the evil exam-
*State* vs. *Little.* } "ple of all others, in the like cases offending, con-
"trary to the form, force and effect of the statute, in such case made
"and provided, and against the peace and dignity of the state."

*Mr. Upham, in support of the motion in arrest.* The indict-
ment, we insist, is insufficient in law to authorize the court to render
a judgment upon the verdict. An indictment must lay the charge
against the respondent positively, and not by way of recital; it
must expressly allege every thing material in the description of
the substance, nature and manner of the crime; for no intendment
shall be admitted to supply a defect of this kind.—3 *Bac. Ab.*
101.—4 *Com. Dig.* 662.—*Arch. Crim. L.* 5, 15, 16, 17.—3
*Salk.* 191.—It must also bring the offence within the statute; no
intendment or conclusion will make good an indictment which
does not bring the offence within all the words of the statute.—
3 *Bac. Ab.* 113.—*Hale's P. C.* 170, 171.—*Mc Nally's. Ev.* 494.
—*Arch. Crim. P.* 22.

Again, it is not always sufficient to pursue the words of the
statute, unless, in so doing, you fully, directly, and expressly allege
the matter wherein the offence consists, without the least uncer-
tainty or ambiguity.—3 *Bac. Ab.* 113,—3 *B.* and *Pul.* 106.—
5 *East's R.* 244.—So an indictment is insufficient wherever all
the facts charged may be true, and yet the party be innocent.—
2 *Hawk. P. C.* 320, 321,—2 *Doug. R.* 153.—An indictment up-
on the *statute of stabbing*, without saying " having a weapon first
drawn," is not good.—3 *Salk.* 191.—1 *Ld. Ray.* 138.—In *Com-
monwealth* vs. *Mc Monagale*, 1 *Mass. R.* 516, the court held that
an indictment for breaking a store could not be supported under
the act of 15th March, 1785, Sec. 8, which enacted " that if
" any person shall break open any dwelling house, in the day time,
" with an intent to steal, or commit any felony, or break open any
" ware house, shop, mill, malt-house, barn, stable, out-house, or
" any public building, or other building whatsoever, or any ship,
" or other vessel, being within the body of the county, by night
" or by day, with an intent to steal, or commit felony," because
the indictment did not allege that the store was a building.

From what has been said, we learn that an indictment, in the
*first* place, must be certain as to the party indicted. In the *sec-*

*ond* place, it must be certain as to the person $\big\{$ Orange, Feb. 1828. against whom the offence was committed. $\big\{$ *State* vs. *Little.* In the *third* place, it must be certain as to the time and place. In the *fourth* place, it must be certain as to the facts, circumstances, and intent, constituting the offence. With these general principles in view, let us proceed to examine this indictment.

1. As to the place where the crime was committed. The indictment does not allege that the defendant, on such a day, enterered a public burying ground, in such a parish, where the bodies of dead persons are buried. Neither does it allege that the dead body of the said *Benjamin P. Calfe,* was there buried in a grave in said burying ground. These are important and material allegations.—2 *Sw's. Dig.* 749.—2 *Chit. Crim. L.* 14.—*Arch. Crim. P.* 379.

2. The indictment does not allege that the defendant dug up, disinterred, or removed the body of a dead person, or a human body.

3. It does not allege that there ever was in existence or life, any such person as *Benjamin P. Calfe,* or that any such person ever died.

4. All the facts charged in the indictment may be true, and yet the party be innocent. The offence consists in digging up and removing a human body. Now the indictment no where charges the respondent with digging up and removing a human body. The allegation is, that *he dug up, disinterred, and removed the dead body of one Benjamin P. Calfe.*

*Nutting,* State's Attorney, *contra.* To the first cause assigned, the prosecutor answers, that the *locus in quo* constitutes no part of the offence; therefore, need not be set forth in the indictment.—*Stat. p.* 275. To the 2d, 3d, 4th and 5th, he answers, that it is unnecessary to aver that *Benamin B. Calfe* was a *person,* or had a *human* body, or once lived, or sickened and died.—1 *East,* 314.—2 *East,* 260.—1 *Chit. Crim. law,* 139, 140, 142 & 143. Also, 1 *Chit.* 196, " where a word or sentence is capable of different meanings, that will be taken by the court which will support the proceedings, and not that which will defeat them." "At the present day

certainty to a common intent is all that is re-
quisite."—*ibid.* To the 6th cause, prosecu-
tor answers, that it is never necessary to negative an exception
or proviso which is contained in a separate clause of the statute
—1 *Chit.* 233.—2 *Chit.* 14.

HUTCHINSON, J. delivered the opinion of the court. The stat-
ute of this state, *(see page* 275,) enacts, concerning the offence
with which the defendant is charged, " that, if any person or per-
sons, shall dig up, remove, or disturb, the remains of any dead
person, interred within this state," he shall be punished *so and so.*

This indictment is not drawn with great caution. It does not
attempt to charge the defendant in the words of the statute. Nor
was that necessary, if other words equivalent were inserted. It is
objected to the indictment, that it neither adopts the words of the
statute, nor those that are equivalent. The indictment, instead of
saying " the remains of any dead person," says " the dead body
of *Benjamin P. Calfe,* then lately before laid in a coffin, and in-
terred in the same burying ground." What are the remains of a
dead person? the dead body is the answer. This is well understood
in common parlance. Nothing else does remain, after the spirit has
fled, but the dead body. In speaking of a person who is living,
if we say that his body was hurt, wounded, &c. it is well under-
stood in its appropriate sense. It means the body of a person,
not of his horse, or his ox.

The objections that it does not appear that *Benjamin P. Calfe*
was a person—that he ever lived and died, &c. are rather too nice
and technical to be sanctioned. All the statutes against crimes
use the expression, " if any person shall do such an act." " If any
person shall break the peace." " If any person shall counterfeit
the coins, &c." No indictment, upon these statutes, was ever seen
alleging that the defendant was a person. The charge is, that
A. B. did such an act. This is sufficient.

So of some other circumstances noticed as objections. They
seem answered by reading the indictment, as every person would
understand it. "That the defendant, at *Washington* in said coun-
ty, with force and arms, the public burying ground near, &c. in said
*Washington,* unlawfully did enter; and the dead body of one *Benja-
min P. Calfe,* then lately before laid in a coffin, and interred in the

same burying ground, did then and there nnlaw-  { Orange, Feb. 1828·
fully dig up, disinter, remove from the said  } State vs. Little.
coffin, disturb and carry away." All these expressions combined
leave but little of that uncertainty supposed by the objections.

But, it is urged that there is no averment that the dead body re-
mained interred, at the time it was dug up by the defendant—
That it only appears argumentatively. This would have been
plausible, if there were no allegation of interment. That the de-
fendant dug up the body, would strongly imply that it was in a
state capable of being dug up ; that is, that it was interred. Yet
this would be inference only. But when the indictment not only
alleges that the defendant dug up, disturbed, disinterred and re-
moved the dead body of *Benjamin P. Calfe*, but also alleges that
the same dead body had then lately been laid in a coffin, and inter-
ced in the same burying ground, it seems too much to call upon
the court to presume, that, notwithstanding all these allegations,
the body might have been disinterred in the mean time, and not
then capable of being dug up by the defendant.

It is hardly supposable that the defendant could ever have suf-
fered at the trial, or been jeopardized, by the admission of any
testimony, but what applied to the indictment, according to its
most natural signification, and as was intended by the grand jury
who presented the same. If proof had been offered of the disin-
terring of any other than a human body, or any other than the bo-
dy of a man or boy of the name of *Benjamin P. Calfe*, it would
have been excluded, as not supporting the indictment.

That technical notion of construing language, used in criminal
prosecutions, which would exclude every common and reasonable
intendment, seems, in modern times, to have been exploded. In
2 *Gal. Rep.* 15, *The United States* vs. *Batchelder*, there was a
motion in arrest after verdict, grounded on supposed defects in the
indictment. Among others, not following the statute formed one
objection. The word "violently" was substituted for "forcibly."
Indeed, there seemed to be no attempt to follow the statute in its
language, only in its substance. The indictment was held suffi-
cient. *Judge Story* there says, "It is not, in general, necessary,
in an indictment for a statutable offence, to follow the exact word-
ing of the statute. It is sufficient, if the offence be set forth with

Orange, Feb. 1828.  ⎱ subtantial accuracy and certainty to a
    *State* vs. *Little.* ⎰ reasonable intendment."———He lays this down
with the single exception of technical words which constitute
the specific offence, like *burglariter* in burglary.   With regard
to tne omission of the word *forcibly*, used by the statute, he says
that means doing an act with force ; and the indictment charges
that the resistance was with force and arms.

The motion in arrest, in the case before the Court, is overruled.

*Nutting*, for State.

*Upham*, for defendant.